UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

        Plaintiff,

v.

Shawn Richard Anderson,

        Defendant.

**MEMORANDUM OPINION
AND ORDER**
Criminal No. 99-229(1) ADM/AJB

_____

Jeffrey S. Paulsen, Assistant United States Attorney, Minneapolis, MN on behalf of Plaintiff.

Lousene M. Hoppe, Esq., Fredrikson & Byron, P.A., Minneapolis, MN, on behalf of Defendant.
_____

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Defendant Shawn Richard Anderson's ("Anderson") Motion for Compassionate Release [Docket No. 364] ("Motion") pursuant to 18 U.S.C. § 3582(c)(1)(A). Plaintiff United States of America (the "Government") opposes the Motion. See Gov't Resp. Opp'n [Docket No. 372]. For the reasons set forth below, the Motion is granted.

## II. BACKGROUND

On November 9, 1999, Anderson was convicted by a jury of conspiracy to manufacture methamphetamine in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846. Verdict [Docket No. 169]. To make the methamphetamine, Anderson and his co-defendants used anhydrous ammonia, a volatile chemical legitimately used as farm fertilizer. Presentence Investigation Report ("PSR") ¶¶ 12–16. Anderson stole a large quantity of anhydrous ammonia from a Cenex facility in Starbuck, Minnesota, and transported it in coolers to the Northeast Minneapolis residence of co-defendant Frank Rizzi. Id. The anhydrous ammonia subsequently exploded, seriously injuring

Rizzi and sending a toxic cloud of ammonia throughout the neighborhood. Police officers and paramedics who responded to the scene were injured by inhaling the fumes and required medical attention. Id. ¶¶ 14, 28.

Anderson was sentenced on March 2, 2000. Min. Entry [Docket No. 195]. The Court determined Anderson was a career offender and that the applicable sentencing guideline range was 360 months to life. The Court sentenced Anderson to 360 months, followed by a five year term of supervised release. Sentencing J. [Docket No. 196] at 2–3. At the time Anderson's sentence was imposed, the sentencing guidelines were mandatory. The Supreme Court later issued a series of decisions holding that mandatory sentencing guidelines are unconstitutional and that the sentencing guidelines are advisory. See Apprendi v. New Jersey, 530 U.S. 466 (2000); United States v. Blakely, 542 U.S. 296 (2004); United States v. Booker, 543 U.S. 220 (2005). After this significant change in the law, defendants convicted of methamphetamine offenses are now, on average, sentenced to 70–75% of the bottom of the guidelines range. See Quick Facts: Methamphetamine Tracking Offenses, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Methamphetamine_FY19.pdf (last visited Nov. 12, 2020).

For the past three years, Anderson was incarcerated at a low-security correctional institution in Milan, Michigan ("FCI Milan"). See App'x [Docket No. 371] at 101. In the time since he filed his compassionate release motion, Anderson was moved to the federal transfer center in Oklahoma City, Oklahoma ("FTC Oklahoma City"), where he awaits transfer to a lower security institution in Duluth, Minnesota. See Federal Bureau of Prisons Inmate Locator, https://www.bop.gov/inmateloc/ (last visited Nov. 12, 2020). His anticipated release date is

August 17, 2025.  Id.  Anderson has served over 21 years of his sentence, which is approximately 80% of the statutory term and 70% of his full term.  App'x at 128.

While in custody, Anderson has availed himself of educational programs and work opportunities.  Mot. at 3, Exs. H, I.  Anderson's courses have focused on his rehabilitation and include classes in conflict management, anger management, drug abuse education, coping strategies, cognitive skills/rational thinking, centered living, and changing criminal thinking.  Id. Ex. I.  Anderson's daily work detail has included duties outside the facility to perform custodial work in the FCI gun range, training center, front lobbies, HR department offices, the financial office, and the Warden's office.  Id. at 3.  During his 21 years in custody, Anderson has incurred 11 disciplinary infractions, with nearly all of these incidents occurring during the first decade of his imprisonment.  He has not had a disciplinary violation in over 7 years.  See App'x at 95–98.

Anderson now moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  Anderson, age 49, argues that he suffers from coronary artery disease, stage 3 chronic kidney disease, obesity, hypertension, and hyperlipidemia.  Mot. Exs. C, D; App'x at 3, 8, 13–15, 46.  He has had multiple heart attacks and has 9 stents in his heart.  App'x at 13.  Anderson contends that the combination of his medical conditions subject him to a significantly increased risk of severe illness or death should he contract the COVID-19 virus.

Anderson further argues the living conditions in prison prevent him from mitigating the risk of contracting COVID-19 because the close confines of the prison environment make social distancing nearly impossible.  Anderson contends these circumstances constitute extraordinary and compelling reasons for his release.  He also argues that he is not a danger to the public and that the sentencing factors support his release.

3

Anderson's reentry plan of residing with his mother has been approved by the United States Probation Office. See Compass. Release Investig. [Docket No. 369]. He expects to seek work as a janitorial custodian, electrician, forklift electrical technician, forklift operator, mechanic, heavy equipment operator, or machinist. Mot. at 3.

The Government opposes Anderson's Motion, arguing a sentence reduction is not warranted because Anderson's overall health is stable, the COVID-19 infections are under control in Anderson's facility, Anderson poses a danger to the community, and the § 3553(a) sentencing factors weigh against his release.

### III.  DISCUSSION

Generally, a "court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One of the few exceptions to this general rule is the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A). Under this provision, a court may reduce a term of imprisonment if, "after considering the factors set forth in section 3553(a)," the court finds that "extraordinary and compelling reasons" warrant a sentence reduction, "and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's applicable policy statement defines "extraordinary and compelling" reasons to include serious medical conditions or cognitive impairments "that substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 comment n.1(A)(ii). "[R]ehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of th[e] policy statement." U.S.S.G. § 1B1.13

4

comment n.3.  The policy statement also requires the court to determine that "[t]he defendant is not a danger to the safety of any other person or to the community" before a sentence reduction may be granted under § 3582(c)(1)(A).  U.S.S.G. § 1B1.13(2).

A defendant may not bring a motion for compassionate release until after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).

The parties agree that Anderson has satisfied the exhaustion requirement because he filed a request for release with the Warden of his institution on May 27, 2020, and the request was denied on July 24, 2020.  See App'x 90–94; Gov't Resp. Opp'n Ex. 1.  Thus, Anderson's Motion is ripe for consideration.

When considering compassionate release motions in the context of the COVID-19 pandemic, courts have required an inmate to show both a "particularized susceptibility to the disease" and "a particularized risk of contracting the disease at his prison facility."  United States v. Miland, No. 16–0159 (WMW), 2020 WL 3249259, at *3 (D. Minn. June 16, 2020) (quoting United States v. Feiling, No. 3:19–112 (DJN), 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020)); accord United States v. Ramirez, No. 17-10328-WGY, 2020 WL 2404858, at *3 (D. Mass. May 12, 2020); United States v. Shamilov, No. 19-cr-238 (SRN), 2020 WL 2029600, at *3 (D. Minn. Apr. 28, 2020).  Anderson's medical conditions of coronary artery disease, stage 3 chronic kidney disease, and obesity are all recognized by the Centers for Disease Control and Prevention ("CDC") as elevating the risk for severe illness and complications from COVID-19.  See CDC, People with Certain Medical Conditions,

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited Nov. 12, 2020).  Anderson also has hypertension, a condition the CDC has recognized as possibly increasing the risk of severe illness from COVID-19.  See id.  The CDC guidelines state that "[t]he more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19."  CDC, People with Multiple Underlying Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fcovid-data%2Finvestigations-discovery%2Fhospitalization-underlying-medical-conditions.html (last visited Nov. 12, 2020).  Thus, Anderson is particularly vulnerable to having a severe case of COVID-19.

      The Government argues that Anderson's medical conditions do not meet the demanding standard for compassionate release because "his overall health is stable."  Gov't Mem. Opp'n at 6.  The Government notes that Anderson's most recent medical exam shows his pulse, heart rate, and heart rhythm are within normal limits, and that stage 3 kidney disease is defined as mild to moderate decrease in kidney function.  The Government also argues that although Anderson's most recent body mass index ("BMI") measurement was 30.8 in February 2020, which meets the CDC's definition of obesity (BMI over 30), Anderson may have lost some weight since February.

      The Government's minimization of Anderson's medical conditions do not alter the conclusion that the combination of Anderson's significant coronary artery disease, chronic

kidney disease, and obesity put him at substantial risk of severe illness or death should he contract COVID-19. Anderson's medical records show he has heart failure with a 45% ejection fraction, which indicates that his previous heart attacks have damaged the heart muscle. See Def. Reply [Docket No. 373] Ex. 1 at 3. In addition to his damaged heart with 9 stents, Anderson's stage 3 kidney disease also heightens his vulnerability to COVID-19. The CDC guidance states that "[h]aving chronic kidney disease of any stage increases your risk for severe illness from COVID-19." See CDC, People with Certain Medical Conditions, Chronic kidney disease, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#chronic-kidney-disease (last visited Nov. 12, 2020) (emphasis added). Anderson's obesity further compounds his risk of death or serious complication should he contract COVID-19. See CDC, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited Nov. 12, 2020).

Not only does Anderson face a significantly increased risk of suffering severe complications or death from COVID-19, the prison environment prevents him from social distancing to avoid contracting the disease. Although the BOP has implemented measures to control the spread of infection, many BOP facilities continue to experience COVID-19 outbreaks. See Federal Bureau of Prisons COVID-19 Coronavirus,

https://www.bop.gov/coronavirus/ (last visited Nov. 12, 2020) (listing positive COVID-19 cases at BOP facilities). Anderson's heightened risk of severe COVID-19 complications due to his serious and chronic medical conditions, combined with his inability to provide self care through social distancing and other measures, constitute extraordinary and compelling reasons warranting a sentence reduction.

In addition to the existence of extraordinary and compelling circumstances, the Court concludes that Anderson "is not a danger to the safety of any other person or to the community." See U.S.S.G. § 1B1.13(2). Anderson's criminal history is more than two decades old. His behavior in prison has long been on a positive trajectory. The classes he has sought out and completed during prison have equipped him with strategies for managing stress, anger, and impulse control. He has not had a single disciplinary violation in more than 7 years and is trusted by prison staff to perform work assignments outside of prison walls. The BOP has recently approved his transfer to a lower security institution.

The sentencing factors in § 3553(a) also weigh in favor of Anderson's release. These factors include "the nature and circumstances of the offense" and "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law ... to provide just punishment for the offense . . . to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a). As to the nature and circumstance of the offense, Anderson's criminal conduct resulted in an unintentional yet reckless explosion that threatened the lives of people in an entire neighborhood and injured first responders. While this is no doubt a serious offense, Anderson, now approaching 50, has served 21 years for his crime and has matured since this time. The need to provide just punishment and

promote respect for the law is satisfied by Anderson serving most of his substantial prison term, completing 80% of his statutory term and 70% of his full term. Had Anderson been sentenced under the advisory rather than mandatory guidelines, the Court likely would have varied downward from the 360-month bottom of the guideline range and Anderson would be on the verge of release. Given his medical conditions, the 21 years that Anderson has served does provide just punishment for his offense, promote respect for the law, and deter him from further criminal conduct.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Shawn Richard Anderson's Motion for Compassionate Release [Docket No. 364] is **GRANTED** as follows:

1. Anderson's previously imposed sentence of imprisonment is reduced to time served;

2. Anderson is placed on supervised release and the Court re-imposes the terms and conditions of supervised release as set forth in the March 6, 2000 Judgment [Docket No. 196] with the following additional special conditions:

    A. The defendant shall abstain from the use of alcohol and other intoxicants and not frequent establishments whose primary business is the sale of alcoholic beverages.

    B. The defendant shall complete an immediate assessment or participate in a program for substance abuse as approved by the probation officer upon release or relapse during their term of supervised release. That program may include testing and inpatient or outpatient treatment, counseling, or a support group. Further, the defendant shall contribute to the costs of such treatment as determined by the Probation Office Co-Payment Program, not to exceed the total cost of treatment.

    C. The defendant shall be required to undergo mandatory drug testing as set forth by 18 U.S.C. §§ 3563(a) and 3583(d).

        D.       The defendant shall refrain from possessing a firearm, destructive device, or other dangerous weapon.

3.       Anderson shall be released to the release residence approved by the Probation Office in the September 21, 2020 Compassionate Release Investigation [Docket No. 369].

4.       This order is **STAYED** for two weeks from the date of the Order to permit the Bureau of Prisons and Probation Office to effectuate Anderson's smooth release back into society.

                                                BY THE COURT:

                                                s/Ann D. Montgomery
                                                ANN D. MONTGOMERY
                                                U.S. DISTRICT COURT

Dated: November 13, 2020